**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| FRANK ROBINSON, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 07-2717 (NLH) |
| | : | |
| v. | : | |
| | : | |
| BURLINGTON COUNTY BOARD OF | : | |
| SOCIAL SERVICES, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

---

**APPEARANCES:**
FRANK ROBINSON
P.O. BOX 481
MOUNT HOLLY, NJ 08060
*Pro Se Plaintiff*

FRANCES WANG DEVENEY
MARKS, O'NEILL, O'BRIEN & COURTNEY, PC
COOPER RIVER WEST
6981 N. PARK DRIVE, SUITE 300
PENNSAUKEN, NJ 08110
*Attorney for Defendants Burlington County Board of Social
Services, Daniel Boas and Yvonne Williams*

**HILLMAN, District Judge**

Pro se plaintiff Frank Robinson filed a complaint alleging
violations of Executive Order 11246, Title VI of the 1964 Civil
Rights Act, Section 504 of the Rehabilitation Act of 1973, Title
II of the Americans with Disabilities Act, the Age Discrimination
Act, and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-
1.  Robinson also alleges that defendants violated his Fifth and
Fourteenth Amendment rights by terminating his benefits without
due process.

Before the Court is defendants' motion to dismiss Robinson's complaint for failure to state a claim upon which relief could be granted.  For reasons explained below, defendants' motion is granted in part and denied in part.[1]

## I.   <u>JURISDICTION</u>

We exercise subject matter jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331.  We exercise supplemental jurisdiction over plaintiff's related state law claim pursuant to 28 U.S.C. § 1367.

## II.   <u>BACKGROUND</u>

Robinson is a 62 year old unemployed, homeless man who receives supplemental social security income ("SSI").  Robinson also had received emergency assistance ("EA") welfare funds under the Work First New Jersey ("WFNJ") program[2] while living in an Executive Inn motel in New Jersey.  EA funds have a lifetime limit of twelve months.  After receiving EA funds for twelve months, on

---

[1]  Defendants also objected to plaintiff filing his opposition to their motion until approximately three weeks after the due date.  As discussed <u>infra</u>, plaintiff is proceeding in this litigation pro se and is described by defendants as homeless.  Plaintiff has also alleged that he suffers from a mental disorder.  Further, defendants have not shown any prejudice due to the late filing of plaintiff's opposition.  Therefore, in consideration of plaintiff's alleged mental state, his lack of permanent address and his pro se status, as well as the lack of showing of prejudice to the defendants, the Court exercises its discretion to permit plaintiff to file his opposition brief beyond the deadline.  <u>See</u> Local Rule 7.1(d)(7).

[2]  The EA program of the WFNJ is codified at N.J.A.C. 10:90-6.1, <u>et</u> <u>seq.</u>

April 2, 2007, Robinson was notified by the Burlington County Board of Social Services ("BCBSS") that his EA funds were terminated.  Included with the notification of termination was a form to apply for an extension of emergency assistance through the Long Term Support ("LTS") program.  Under the LTS program, extended emergency assistance is available in cases of extreme hardship for individuals who are considered "unemployable" due to chronic long term impairment.

Robinson filled out the application for LTS funds and stated that he believed he was eligible because he met the criteria of being age 60 or older, having received WFNJ/General Assistance or WFNJ/TANF,[3] and having a current physical or mental health status that could make it impossible for him to get or keep a job. Robinson's LTS application was approved on or about April 10, 2007, and his housing arrangements at the Executive Inn motel were continued until April 30, 2007.

On April 30, 2007, Robinson went to the BCBSS and met with defendant Yvonne Williams.  He told Ms. Williams that he had been displaced from the Executive Inn on April 29, 2007.  Ms. Williams advised him that a room had become available at Tulloch's Rooming House in Burlington City, New Jersey and that he should contact Ed

---

[3]  "WFNJ provides temporary cash assistance and many other support services to families through the Temporary Assistance for Needy Families (TANF) program."  See http://www.state.nj.us/humanservices/dfd/wfnjws.html.

Tulloch for details.  Robinson alleges that he contacted Mr. Tulloch who told him that he might not be able to afford the room based on Robinson's income.

On May 7, 2007, the BCBSS received Robinson's request for a fair hearing pursuant to N.J.A.C. 10:90-9.3.[4]  On May 10, 2007, Robinson spoke with a social worker who told him he needed to call Tulloch's Rooming House.  Robinson states that he told the social worker that he had called Mr. Tulloch but was told he may not be able to afford a room.  Robinson alleges that BCBSS did not give him a fair hearing.

### III. <u>DISCUSSION</u>

### A.  Standard for Motion to Dismiss Under Rule 12(b)(6)

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light

---

[4] N.J.A.C. 10:90-9.3 states in part:

It is the right of every applicant for or recipient of WFNJ adversely affected by an action of a county or municipal agency to be afforded a fair hearing in a manner established by the rules in this subchapter, by the Uniform Administrative Procedure Rules (N.J.A.C. 1:1) and N.J.A.C. 1:10, Family Development Hearings. These rules have been established pursuant to Federal regulations, and the New Jersey Administrative Procedure Act (N.J.S.A. 52:14B-1 et seq.).

N.J.A.C. 10:90-9.3(a).

most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to

suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).   The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, since plaintiff is proceeding pro se, a more lenient standard is applied in determining whether the complaint states a claim that would entitle him to relief.  See Estelle v. Gamble, 429 U.S. 97, 107  (1976) (recognizing that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotations omitted).  We address each of Robinson's claims separately below.

**B.  Executive Order 11246**

The Office of Federal Contract Compliance Programs administers and enforces Executive Order 11246, as amended, which

6

prohibits federal contractors and federally-assisted construction contractors and subcontractors, who do over $10,000 in government business in one year from discriminating in employment decisions on the basis of race, color, religion, sex, or national origin.[5] See Atkinson v. Sellers, 233 Fed.Appx. 268, 271 (4th Cir. 2007)(quoting Volvo GM Heavy Truck Corp. v. U.S. Dep't of Labor, 118 F.3d 205, 206 (4th Cir. 1997) (citing Exec. Order No. 11246, § 202, 3 C.F.R. 167, 168 (1965 Supp.), amended by Exec. Order No. 11375, 3 C.F.R. 320, 321 (1967 Comp.)).  Courts in the Third Circuit have ruled that there is no private right of action for violation of executive orders in general, and Executive Order 11246 in particular. See Thompson v. Mobile Communications, No. 98-4691, 1999 WL 232018, at *7 (D.N.J. Apr. 19, 1999)(citing Farmer v. Philadelphia Elec. Co., 329 F.2d 3, 8 (3d Cir. 1964); Cap v. Lehigh Univ., 433 F.Supp. 1275, 1281 (E.D.Pa. 1977); Bradford v. Peoples Natural Gas Co., Inc., 60 F.R.D. 432, (W.D.Pa. 1973); Braden v. University of Pittsburgh, 343 F.Supp. 836, 840 (W.D.Pa. 1972), vacated on other grounds, 477 F.2d 1 (3d Cir. 1973)).  In addition, Robinson has not alleged discrimination in an employment decision.  Accordingly, Robinson's claims brought under Executive Order 11246 are dismissed.

---

[5]  The Executive Order also requires government contractors to take affirmative action to insure that equal opportunity is provided in all aspects of their employment.  See Office of Federal Contract Compliance Programs (OFCCP) at http://www.dol.gov/esa.

C.    **Title VI**

Title VI precludes exclusion from participation in, denial of the benefits of, and discrimination under any program or activity receiving federal financial assistance on account of race, color, or national origin.  See 42 U.S.C.A. § 2000d,[6] et seq.  Title VI provides a private cause of action for intentional discrimination. Pryor v. National Collegiate Athletic Ass'n., 288 F.3d 548 (3d Cir. 2002)(citing Alexander v. Sandoval, 532 U.S. at 281).

Robinson has not alleged sufficient facts to assert a claim that defendants have discriminated against him on the basis of race, color or national origin.[7]  Although not entirely clear, it

---

[6]  42 U.S.C.A. § 2000d, states:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

[7]  Although plaintiff does state that discrimination is prohibited based on a person's race, creed, color or national origin, it appears that plaintiff is reciting the words of the statute rather than alleging facts.  His complaint does not provide any facts that could support a claim that he was discriminated against based on those categories.  See Gadsden v. New Jersey Educ. Ass'n, No. 07-4861 (JLL), 2007 WL 3025667, at * 1 (D.N.J. Oct. 12, 2007)(finding that a pro se complaint may be dismissed for failure to state a claim if the allegations cannot be construed as supplying facts in support of a claim) (citing Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981)(other citations omitted).  Although the complaint as currently written does not allege sufficient facts for this claim, plaintiff will be permitted leave to amend his complaint.  Id. (stating that "[w]here a complaint can be remedied by an amendment, a district

appears that Robinson is alleging that he was discriminated against because of either his sexual orientation, or mental or physical disability, neither of which is grounds for a Title VI claim.  Thus, Robinson has not stated a claim under Title VI and this claim is dismissed.

**D.   Section 504 of the Rehabilitation Act**

Section 504 of the Rehabilitation Act ("RA") states:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

In order to establish a prima facie showing of disability discrimination under the RA, the plaintiff bears the burden of proving that 1) he or she is a "handicapped individual," 2) he or she is "otherwise qualified" for participation in the program, 3)

---

court may not dismiss the complaint with prejudice, but must permit the amendment of same." (citing <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 111 (3d Cir. 2002) ("stating that unless amendment would be futile, district court may not dismiss complaint without permitting amendment").

the program receives "federal financial assistance," and 4) he or she was "denied the benefits of" or "subject to discrimination" under the program.  Liberty Resources, Inc. v. Philadelphia Housing, 528 F.Supp.2d 553, 565 (E.D.Pa. 2007)(citing Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368, 1380 (3d Cir. 1991) (quoting Strathie v. Department of Transp., 716 F.2d 227, 230 (3d Cir. 1983)).

Defendants argue that Robinson has not stated a claim under the RA because he does not have a disability as defined by § 705(20), and therefore cannot meet the first element of his claim. They argue that Robinson has based his claim on an alleged discrimination due to his self-described sexual orientation and "deformed penis" which is not a recognized disability under the RA.

To the extent that Robinson's RA claim is based on discrimination due to his sexual orientation, his claim is dismissed.  Under § 705(20), the term "impairment" excludes homosexuality and bisexuality.  To the extent that Robinson's RA claim is based on discrimination due to his perceived deformity to his sexual organs, even if his perceived deformity qualifies as a physical impairment, he has not alleged facts that could show that it limited a major life activity.  The term "individual with a disability" excludes individuals on the basis of "... gender

10

identity disorders not resulting from physical impairments, or
other sexual behavior disorders."  See 29 U.S.C.A. § 705(20)(E)
and (F).  Assuming that Robinson's allegations qualify as a
"gender identity disorder," it must be determined whether it comes
under the exception for such disorders "resulting from physical
impairments."  A "physical impairment," has been described as "any
physiological disorder or condition, cosmetic disfigurement, or
anatomical loss affecting one or more of the following body
systems: neurological; musculoskeletal; special sense organs;
respiratory, including speech organs; cardiovascular;
reproductive, digestive, genito-urinary; hemic and lymphatic;
skin; and endocrine." Toyota Motor Mfg., Kentucky, Inc. v.
Williams, 534 U.S. 184 (2002) (citing 45 CFR § 84.3(j)(2)(i)).
Assuming for purposes of this motion that Robinson proceeding pro
se has alleged enough facts that a deformed penis could be
considered a "physical impairment" so as not to be excluded under
"genital identity disorders," he has not alleged facts that could
suggest that his deformity limited a major life activity.  The RA
regulations provide examples of "major life activities" as "caring
for one's self, performing manual tasks, walking, seeing, hearing,
speaking, breathing, learning, and working." Id.; 45 CFR §
84.3(j)(2)(ii).  Robinson has not alleged any facts that could
suggest that his deformity limited a major life activity and,
therefore, he has not alleged sufficient facts that could suggest

11

that he is a "handicapped individual" on that basis.[8]

However, in his complaint, Robinson also states that he suffers from adjustment disorder and paranoid personality disorder.  Under § 705(20), an "individual with a disability" includes any person who "... has a physical or mental impairment which substantially limits one or more of such person's major life activities; [] has a record of such an impairment; or [] is regarded as having such an impairment."  See 29 U.S.C.A. § 705(20)(E).  Robinson's allegation of adjustment disorder and paranoid personality disorder indicate a mental impairment.  Also, Robinson's application for extended benefits states that his current physical or mental health status could make it impossible for him to get or keep a job which suggests that his mental impairment substantially limits the major life activity of working.  See 45 CFR § 84.3(j)(2)(ii); Murphy v. United Parcel Service, Inc., 527 U.S. 516, 523 (1999) (finding that to be regarded as substantially limited in the major life activity of

_____

[8] Robinson also lists that a person cannot be discriminated against on the basis of "aids status."  AIDS is considered a handicap protected under the RA.  See Estate of Behringer v. Medical Center at Princeton, 592 A.2d 1251, 1275 (N.J.Super.L.D. 1991)(citing Chalk v. United States District Court, 840 F.2d 701 (9 Cir. 1988); Doe v. Dolton Elementary School Dist. No. 148, 694 F.Supp. 440 (N.D.Ill. 1988); Ray v. School Dist. of DeSoto County, 666 F.Supp. 1524 (M.D.Fla. 1987)).  Plaintiff, however, does not state that he has AIDS, or allege any facts that could support a finding that he has AIDS.  He also does not allege any facts that could support a finding that he was discriminated on the basis of AIDS.

working a person must be regarded as precluded from more than a particular job).  Although the Court agrees that Robinson's complaint appears to rely on allegations of discrimination based on sexual orientation/sexual deformity, a lenient standard is applied to his pro se complaint, and in this light we find that Robinson has sufficiently alleged that he has a mental impairment that substantially limits his ability to work.

Robinson has also alleged sufficient facts that could show that he was qualified for participation in the LTS program thereby meeting the second element of his prima facie case.  He applied for and received an extension of benefits under the LTS  program. Defendants do not dispute that Robinson is qualified to receive funds under this program.  There is also no dispute as to the third element that under the RA, BCBSS receives "federal financial assistance."  Thus the remaining dispute is over the fourth element - whether Robinson was "denied the benefits of" or "subject to discrimination"... "solely by reason of [] his disability."

Robinson alleges that he was told by Mr. Tulloch that he might not be able to afford a room at Tulloch's Rooming House based on his income.  In his application for a fair hearing Robinson states that after he was displaced from the Executive Inn motel he stayed at the "Clover Motel in Mapleshade [sic] paying my

way because I did not think I was on the welfare program anymore."
These alleged facts suggest that Robinson may have been denied the
funds available to him under the LTS program satisfying the first
part of the fourth element of his claim.  See Alexander v. Choate,
469 U.S. 287, 301 (1985) (holding that compliance with Section 504
"requires that an otherwise qualified handicapped individual be
provided with meaningful access to the benefit that the grantee
offers.").

However, the second part of the fourth element requires
Robinson to plead facts that could suggest that he was denied
benefits "solely by reason of" a recognized disability.  See 29
U.S.C. § 794(a).  Even though the Court applies a lenient standard
to Robinson's pro se complaint, and views the facts in a light
most favorable to plaintiff on a motion to dismiss, the complaint
simply does not allege that Robinson was denied benefits "solely
by reason of" his mental impairment.  There are no facts plead
that could suggest that Robinson was denied benefits solely
because of his adjustment disorder or paranoid personality
disorder.  As the complaint is currently written, it does not
state a claim under the RA.  Thus, Robinson's RA claim is
dismissed.[9]

---

[9]  As stated previously, Robinson is permitted leave to file
an amended complaint.  See Gadsden, 2007 WL 3025667, at * 1.

14

Robinson's RA claims against defendants Daniel Boas and Yvonne Williams in their individual capacities are also dismissed because there is no individual liability available under the RA. See Taylor v. Altoona Area School Dist., 513 F.Supp.2d 540, 556 (W.D.Pa. 2007) (stating that the Third Circuit has held that individual liability is not available under the Rehabilitation Act)(citing A.W. v. Jersey City Public Schools, 486 F.3d 791, 804 (3d Cir. 2007)).  Also, Robinson has not alleged and there is no basis to infer that either of the individual defendants received federal financial assistance.  See Zied-Campbell v. Richman, No. 1:04-CV-0026, 2007 WL 1031399, at *16 (M.D.Pa. Mar. 30, 2007) (stating "Section 504 applies only to recipients of federal financial assistance.") (citing United States Dep't of Transp. v. Paralyzed Veterans of America, 477 U.S. 597, 605 (1986)("Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds.").

**E.  Americans with Disabilities Act**

Title II of the ADA provides that:

No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity.

15

42 U.S.C.A. § 12132.

Given the similar language in the ADA and RA statutes, the analysis under the ADA is the same as the analysis under the RA. See New Directions Treatment Services v. City of Reading, 490 F.3d 293, 302 (3d Cir. 2007) (stating that the two claims are often analyzed together).  The statutes are not exactly the same, however, in that § 504 of the RA states that "[n]o otherwise qualified individual with a disability ... shall, *solely by reason of her or his disability*, be excluded..." while the ADA prohibits discrimination against an individual "*by reason* of such disability." Id. (citing 42 U.S.C. § 12132 (emphasis in original). The ADA, unlike the RA, only requires "but for" causation. Id. (citing Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 157-58 (3d Cir. 1995)).  Nonetheless, the Third Circuit has recognized a Congressional intent for the two acts' judicial and agency standards to be "harmonized" so that the same analysis is applied to both, id., and we do so here.[10]

For the same reason that Robinson does not state a claim under the RA, he fails to state a claim under the ADA.  Robinson has failed to allege that defendants denied him benefits by reason

---

[10]   The ADA is viewed as having expanded the Rehabilitation Act's prohibitions against discrimination into the private sector.  Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 157 (3d Cir. 1995).

of his mental impairment.  Accordingly, as with Robinson's RA claim, Robinson's ADA claim as currently written is dismissed with leave to file an amended complaint.

Robinson's ADA claims against defendants Daniel Boas and Yvonne Williams in their individual capacities are also dismissed because there is no individual liability available under Title II of the ADA.  See Zatuchni v. Richman, No. 07-4600, 2008 WL 3408554, at *5 (E.D.Pa. 2008) (stating that it is well established that no individual liability is available under Title II of the ADA as a matter of law) (citing Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002); Garcia v. S.U.N.Y. Health Scis. Ctr., 280 F.3d 98, 107 (2d Cir. 2001)).[11]

**F.  Age Discrimination Act**

Under the Age Discrimination Act:

---

[11]  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2003).  The term "public entity" does not include individuals, but is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 USCS § 24102(4)])." 42 U.S.C. § 12131(a). See Zied-Campbell, 2007 WL 1031399, at *16 (stating that the plain language of § 12132 applies only to public entities not individuals)(citations omitted).

> ... no person in the United States shall, on the basis
> of age, be excluded from participation in, be denied the
> benefits of, or be subjected to discrimination under,
> any program or activity receiving Federal financial
> assistance.

42 U.S.C.A. § 6102.

Robinson must exhaust his administrative remedies before
filing an ADA claim.  Under 42 U.S.C.A. § 6104(e)(2), "no [ADA]
action ... shall be brought ... if administrative remedies have
not been exhausted."[12]  See Shorter v. Alameida, 186 Fed.Appx. 741
(9th Cir. 2006) (finding district court properly dismissed
complaint because plaintiff did not exhaust mandatory federal
administrative remedies by notifying the federal Secretary of
Health and Human Services prior to filing his complaint); Simmons
v. Middle Tennessee State University, 117 F.3d 1421, (6th Cir.
1997) (stating that in order for a district court to have
jurisdiction under the ADA, plaintiff must exhaust her
administrative remedies); Lannak v. Biden, No. 06-180, 2007 WL
625849, at *2 (D.Del. Feb. 27, 2007)(dismissing case where

---

[12]  Further, 42 U.S.C.A. § 6104(f) states:

With respect to actions brought for relief based on an
alleged violation of the provisions of this chapter,
administrative remedies shall be deemed exhausted upon
the expiration of 180 days from the filing of an
administrative complaint during which time the Federal
department or agency makes no finding with regard to
the complaint, or upon the day that the Federal
department or agency issues a finding in favor of the
recipient of financial assistance, whichever occurs
first.

plaintiff's administrative complaint with the Office of Civil Rights was still pending at the time suit was filed in district court).  There are no facts in the record as to whether Robinson filed an administrative complaint concerning his ADA claim prior to filing suit.  This Court does not have jurisdiction over Robinson's ADA claim until he exhausts mandatory administrative remedies.  Therefore, Robinson's age discrimination claim is dismissed.  Robinson's claims against defendants Daniel Boas and Yvonne Williams in their individual capacities are also dismissed since they are not alleged to be, and there is no basis to infer them as, recipients of federal funding from the federal government.[13]  See Rannels v. Hargrove, 731 F.Supp. 1214, (E.D.Pa. 1990).

**G.   Due Process Claims**

Robinson also claims that termination of his benefits without a prior hearing violates his due process rights under the Fourteenth Amendment.[14]  Defendants do not specifically argue that

_____

[13]  Under the ADA "program or activity" is defined as "all of the operations of ... a department, agency, ... or other instrumentality of a State ... or the entity of such State ... that distributes such assistance and each such department or agency ... to which the assistance is extended ..." 42 U.S.C.A. § 6107(4) (West Supp. 1989).

[14]  Robinson's claims brought under the Fifth Amendment against defendants are dismissed because the Fifth Amendment does not apply to state actors.  See Schneider v. Merritt, 244

19

Robinson's due process claim should be dismissed but rather generally argue that Robinson did not exhaust his administrative remedies.

The right to due process is encapsulated in the Fourteenth Amendment's prohibition against the States from "depriv[ing] any person of life, liberty, or property, without due process of law." Jones v. Flowers, 547 U.S. 220, 240 (2006).  The Supreme Court has held that "... a State must provide an individual with notice and opportunity to be heard before the State may deprive him of his property."  Id. (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).  42 U.S.C. § 1983 provides a cause of action for citizens injured by an abridgment of the protections afforded under the due process clause of the Fourteenth.  See Engquist v. Oregon Dept. of Agr., 128 S.Ct. 2146, 2158 (U.S. 2008) (citing Collins v. Harker Heights, 503 U.S. 115, 119-120 (1992)).

Defendants do not dispute Robinson's claim that he is entitled to a "fair hearing" before benefits can be denied. See Redding v. Burlington County Welfare Bd., 323 A.2d 477, 481 (N.J.

---

Fed.Appx. 778, 780 (9th Cir. 2007)(stating that "[p]laintiffs cannot allege colorable Fifth Amendment claims because the Fifth Amendment does not apply to state actors.") (citing Betts v. Brady, 316 U.S. 455, 462 (1942) ("Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safeguarded against state action in identical words by the Fourteenth."), overruled on other grounds by Gideon v. Wainwright, 372 U.S. 335 (1963)).

1974) (stating "[f]air hearing procedure is designed to protect a
needy person from summary administrative action which could
deprive him of assistance to which he may be entitled.").  The
record indicates that Robinson requested a fair hearing.  The
record does not, however, state whether a fair hearing was ever
conducted.  Although the parties agree that Robinson was contacted
by a social worker at BCBSS, defendants do not state that the
social worker conducted a fair hearing.[15]  Therefore, based on the
record before the Court, it appears that Robinson has a colorable
due process claim for failure to provide him with a fair hearing.

Although we find Robinson has plead sufficient facts to
proceed on his claim brought pursuant to § 1983 for violation of
his due process rights, defendants have raised the affirmative
defense that Robinson has not exhausted his administrative
remedies.  Defendants argue that Robinson has attempted to
circumvent the procedural safeguards put in place by prematurely
filing suit and that while Robinson requested a fair hearing, his
request was the only administrative step he took to resolve the
issue.

"Where relief is available from an administrative agency, the
plaintiff is ordinarily required to pursue that avenue of redress

---

[15]   The record is also not clear on whether the benefits,
after being awarded, were ever conveyed to Robinson or whether
they were denied.

before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." Reiter v. Cooper, 507 U.S. 258, 269 (1993) (citing Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51(1938); Heckler v. Ringer, 466 U.S. 602, 617, 619, n. 12 (1984)).  Generally, in § 1983 cases, however, there is no constitutional or statutory requirement that a plaintiff exhaust his administrative remedies. See Patsy v. Board of Regents of State of Fla., 457 U.S. 496, 502 (1982) (concluding that exhaustion of administrative remedies in § 1983 actions should not be judicially imposed but that exhaustion is required where Congress provides that certain administrative remedies shall be exclusive); Papaiya v. City of Union City, 238 Fed.Appx. 848, 850 n.2 (3d Cir. 2007) (stating that claim did not lack ripeness because the exhaustion of state remedies is not a prerequisite to bringing an action under § 1983)(citing Patsy, 457 U.S. at 516); Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981) (finding that actions under § 1983 do not statutorily carry the added requirement that the plaintiff exhaust his state remedies before bringing a federal action).

    Here, defendants have merely raised the defense without providing the Court with any authority for imposing the requirement.  Even assuming that Robinson was required to exhaust his remedies before bringing his § 1983 claim, defendants do not

state sufficient facts in support of their defense.  The only facts alleged were that Robinson qualified for an extension of emergency WFNJ benefits but that he apparently could not afford the housing suggested by BCBSS and subsequently requested a fair hearing.  There are no facts as to whether WFNJ benefits were actually denied that would prompt a need for a fair hearing.  See N.J.A.C. 10:90-9.3.  Under N.J.A.C. 10:90-9.3, every applicant for or recipient of WFNJ who is adversely affected by an action of a county or municipal agency has a right to a fair hearing.  The Court could assume that by stating that Robinson failed to exhaust his remedies defendants are conceding that some adverse action took place requiring a fair hearing.  Even assuming that an adverse action took place, however, there is no evidence that the hearing was ever held.  Defendants also do not describe the procedure that Robinson failed to pursue in order to effectively exhaust his administrative remedies, such as what step did he fail to pursue after he requested the fair hearing.[16]

---

[16]  This is not to conclude that Robinson was not required to exhaust administrative remedies, or if he was so required that he met the exhaustion requirement, only that on a motion to dismiss, all facts are viewed in the light most favorable to plaintiff and that defendants have not met their burden proving the affirmative defense of failure to exhaust.  See Todd v. Benning, 173 Fed.Appx. 980, 982 (3d Cir. 2006) (finding district court erred in granting motion to dismiss where defendants did not meet their burden of proving the affirmative defense of failure to exhaust).

Because defendants have not alleged sufficient facts in support of their affirmative defense, and Robinson has plead sufficient facts in support of his claim, defendants' motion to dismiss Robinson's due process claim is denied.

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part.  Defendants' motion is denied as to Robinson's due process claim and granted as to Robinson's other claims.[17]  Also, Robinson will be granted leave to amend his complaint in consideration of this Opinion.

s/Noel L. Hillman

At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.

Dated: September 18, 2008

---

[17]   The Court also notes that Robinson alleged a claim under the New Jersey Law Against Discrimination ("NJLAD").  Defendants' motion did not seek to dismiss that particular claim and, therefore, Robinson's NJLAD claim also remains.  Defendants are of course free to move to dismiss that claim upon subsequent filing.